**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0568, <u>Appeal of Woodsville Fire District</u>, the court on July 24, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  The petitioner, Woodsville Fire District (the District), challenges decisions of the respondent, New Hampshire Department of Revenue Administration (DRA), related to DRA's disallowance of two warrant articles passed by voters in the Town of Haverhill (the Town) for the purpose of raising and appropriating funds for the District's fire department and highway department.  In her final order, the commissioner of the DRA concluded that the District lacked standing, and that, regardless, the challenge was premature since the tax rate had not been officially set, and thus, the commissioner lacked subject matter jurisdiction to adjudicate the matter on the merits.  We conclude that the commissioner's determination on standing was erroneous, but dismiss the petition for the reasons stated herein.

The following facts either were found by the commissioner, are undisputed by the parties, or appear in the record.  The District is a municipal corporation formed in the 1880s that is located entirely within the boundaries of the Town.  Special legislation involving the District has been enacted and amended over the years.  <u>See</u> Laws 1887, ch. 204; Laws 1899, ch. 196; Laws 1990, ch. 37; Laws 2009, 147:1; Laws 2021, ch. 124.  In particular, as amended in 2021, the special legislation provided, in pertinent part: "Highway block grant funds shall be distributed in accordance with the department of transportation formula.  Any appropriations to the Woodsville fire district shall be as directed by warrant articles duly voted by the voters present and voting at each annual Haverhill town meeting."  Laws 2021, 124:1 (bolding omitted).

In March 2022, voters at the Town's annual town meeting passed two warrant articles appropriating funds to the District.  Article 27, as amended, appropriated $298,630 to fund the 2022 operating budget of the District's highway department.  Article 28, passed as warned, appropriated $146,974 to fund the 2022 operating budget of the District's fire department.

In May, a municipal accounts advisor in DRA's municipal and property division (the division) notified the Haverhill town manager that warrant articles

27 and 28 would "be deleted pursuant to RSA 21-J:35, III, because they are not consistent with statute." See RSA 21-J:35, III (2020). The letter explained:

> Specifically, RSA 31:4 permits the voters to appropriate money for purposes not prohibited by law. Under applicable New Hampshire judicial precedent one municipal entity cannot make an appropriation for another unless special legislation so provides.
>
> With respect to Article 27, the special legislation, N.H. Laws, 124:1 (2021), does not authorize the Town to appropriate money for Woodsville fire district's highway department.
>
> With respect to Article 28, the special legislation of the Woodsville fire district does not authorize funding Woodsville's fire department because we have not seen any evidence that the Woodsville fire district properly organized a fire department consistent with New Hampshire law. See N.H. Gen Laws, 107:1 (1878). Funding an ultra vires activity cannot be considered a lawful purpose. That said, if the Town or the Woodsville fire district can produce evidence showing that a village fire district was formed in conformity with the requirements of law then extant, we will reconsider the deletion of Article 28.

The District contacted the division and, "in the interest of efficiency," sought reconsideration of the division's decision prior to the setting of the tax rate. Following a hearing, the commissioner issued a final order dismissing the case. She first concluded that the District did not have standing to contest a tax rate in this matter. She also found that even if the District had standing to appeal, its request was prematurely filed and, therefore, she lacked subject matter jurisdiction over the matter. Finally, she found "that absent subject matter jurisdiction, any order that [she] would make in this case would be void," and, therefore, she declined to address the parties' arguments on the merits. The District filed a motion for reconsideration, which the commissioner denied.

The District then sought review in this court. DRA moved for summary affirmance, which we denied. DRA then informed both the Town and the District that it could not set the tax rates for either the Town or the District while this appeal was pending. The Town requested, then demanded on threat of legal action, that DRA set the Town's tax rate.

On January 30, 2023, counsel for DRA informed the District that the tax rates had been set with the appropriations in warrant articles 27 and 28 included. DRA counsel opined that "[t]his seems to moot the appeal." In response, the District's counsel conveyed her opinion that only a withdrawal of DRA's position stated in the disallowance letter would moot the appeal: "In

2

short, we need an express acknowledgement from the DRA that its May 4, 2022 disallowance letter is withdrawn, that it does not view Woodsville's operation of a fire department as ultra vires, and that the funds appropriated through articles 27 and 28 are authorized by Woodsville's legislation." The District represents that DRA has not rescinded its position.

Before turning to the merits, we determine our jurisdiction over this matter. The District filed its appeal by petition under RSA 541:6 and Supreme Court Rule 10. However, it also invoked Supreme Court Rule 11 and stated that "if there is no statutory or regulatory avenue for appeal of the DRA's decisions, on the merits and on the procedure, then [the District] requests that the Court accept this appeal as a request for Writ of Certiorari."

We first consider whether the District's claims are appealable to this court under RSA chapter 541. See Petition of Whitman Operating Co., 174 N.H. 453, 457 (2021). "Appeals from administrative proceedings may be taken under RSA chapter 541 only when so authorized by law." Appeal of Rye Sch. Dist., 173 N.H. 753, 757 (2020) (quotation omitted); see RSA 541:2 (2021).

We have interpreted this clause to mean that the provisions of chapter 541 do not provide an appeal from the determination of every administrative agency in the state. Unless some reference is made to chapter 541 in a given statute, an appeal under the provisions of chapter 541 is not authorized by law.

Appeal of Rye Sch. Dist., 173 N.H. at 757 (quotation omitted).

The District's appeal concerns DRA's actions, or failures to take action, in accordance with RSA chapter 21-J (2020 & Supp. 2023). Nowhere does that chapter reference RSA chapter 541. The District fails to cite any law explicitly referencing RSA chapter 541 that would authorize this appeal. Accordingly, we conclude that we do not have RSA chapter 541 jurisdiction.

RSA 21-J:35, the provision primarily at issue here, provides no mechanism for judicial review. See RSA 21-J:35 (2020). Because there is no statutory provision for appellate review of the commissioner's decision in this case, we do not have RSA chapter 541 jurisdiction, and a petition for a writ of certiorari is the proper vehicle for obtaining review. See Petition of Chase Home for Children, 155 N.H. 528, 532 (2007). Therefore, we treat the petition as one for certiorari review pursuant to Supreme Court Rule 11.

"Certiorari is an extraordinary remedy that is not granted as a matter of right, but rather at the court's discretion." Petition of N.H. Div. of State Police, 174 N.H. 176, 180 (2021). Our review of an administrative agency's decision on a petition for certiorari entails examining whether the agency "has acted illegally with respect to jurisdiction, authority or observance of the law or has

3

unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously." Petition of Chase Home for Children, 155 N.H. at 532. "We exercise our power to grant such writs sparingly and only where to do otherwise would result in substantial injustice." Id.

The primary question raised by the District is "whether a municipal corporation has standing to appeal the DRA's denial of voter-approved warrant articles that impact the municipal corporation's tax rate." The commissioner found that "the District does not have standing to contest the Town of Haverhill's tax rate." She further found that "the District has no standing to appeal a tax rate in this matter even if one had been set." (Emphasis added.) The District argues that the commissioner's "determination that 'only Haverhill' may appeal the DRA's decision to disallow Articles 27 and 28 was incorrect as a matter of law, because the statutory scheme allows [the District] to appeal its own tax rate, including any decision made by [DRA] in the establishment of [the District's] tax rate."

Because the commissioner reinstated Articles 27 and 28 after the District filed its petition in this court, the issue of standing to challenge disallowance of those articles is moot. See In re G.W., 176 N.H. 64, 77 (2023) ("Generally, . . . a matter is moot when it no longer presents a justiciable controversy because issues involved have become academic or dead."). However, because the issue of the District's standing to challenge warrant articles passed by Town voters may arise again and raises a purely legal issue of pressing public interest, we elect to answer it. See Olson v. Town of Grafton, 168 N.H. 563, 566 (2016) (concluding that "[a]lthough any issues the plaintiffs raised in the trial court with regard to the March 2015 annual meeting are now moot, Olson's appeal is not moot because it presents legal issues that are of pressing public interest and are capable of repetition yet evading review" (quotation omitted)).

RSA 21-J:35, V provides: "The commissioner shall notify in writing the governing body of each city or town of the rate he has established. This notification shall include a detailed explanation of all changes made in the appropriations or revenue estimates submitted by the municipality or district in question." RSA 21-J:35, V (2020). RSA 21-J:35, VI then provides that within 10 days of that notification, any municipality "dissatisfied with the tax rate set under this section may . . . request an oral hearing on this matter before the commissioner of revenue administration." RSA 21-J:35, VI. Read together, these sections detail a mechanism for: (1) notifying each municipality, once its tax rate has been established, of both the rate and any changes to appropriations or revenue estimates that were made in establishing that rate; and (2) allowing any municipality dissatisfied with the rate thus established to request a hearing to challenge that rate and, implicitly, the underlying determinations made in establishing it, including a decision to change any "appropriations or revenue estimates submitted by the municipality or district in question," RSA 21-J:35, V. Accordingly, the District would have standing

4

under RSA 21-J:35, VI to challenge the disallowance of any warrant article appropriating funds to the District, including one passed by the voters of the Town. The commissioner's finding to the contrary is erroneous as a matter of law.

The District next challenges the commissioner's finding that she lacked jurisdiction. It argues that the commissioner's "determination that any orders made with respect to Articles 27 and 28 would have been 'void' incorrectly interprets the Commissioner's jurisdiction and should be reversed." Because the commissioner ultimately reinstated Articles 27 and 28, the District's challenge is moot. See In re G.W., 176 N.H. at 77 (concluding party's challenge to legality of her detention in jail after court ordered her involuntary admission was moot because she "has already been transferred out of the jail and into the SPU"). Accordingly, we decline to address it. See id. (noting that "[t]he question of mootness is one of convenience and discretion").

Finally, the District asks us to "rule that the DRA erred when it determined that [the District's] operation of a fire department is ultra vires and that [the District's] special legislation does not authorize [Town] voters to appropriate funds to [the District]." DRA argues that we should decline to address these issues on the merits because: (1) the commissioner's final decision did not reach them; (2) they are not ripe for judicial review; and (3) the District did not join the Town, a necessary party to this case.

As previously noted, certiorari is an extraordinary remedy. Petition of N.H. Div. of State Police, 174 N.H. at 180. Certiorari review of an administrative agency's decision entails examining whether the agency "has acted illegally with respect to jurisdiction, authority or observance of the law or has unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously." Petition of Chase Home for Children, 155 N.H. at 532. Here, the commissioner specifically declined to "address the parties' arguments as [she had] no jurisdiction to issue a decision on the merits in this case." Thus, we have no decision of the commissioner on the merits to review.

The District nevertheless argues that we "can rule as a matter of law that (i) the plain and unambiguous language of [the District's] enabling statute authorizes the voters of the Town . . . to appropriate funds to [the District]; and (ii) [the District], as a village fire district, is authorized to operate a fire department." We decline to address these claims on the merits. "A writ of certiorari is not usually granted if the party seeking this redress has another remedy which is ample and convenient. Nor is it granted when an appeal is available and there are no unusual circumstances requiring this court to exercise this summary power." George v. Commercial Credit Corp., 105 N.H. 269, 271 (1964). Having concluded herein that the District would have standing under RSA 21-J:35, VI to challenge the disallowance of a Town warrant article appropriating funds to the District, we also conclude that the

5

District has an adequate remedy in RSA 21-J:35, VI should DRA again disallow such appropriations for reasons the District believes are erroneous, including the reasons the District challenges in this case. If it is then dissatisfied with the commissioner's ruling in the RSA 21-J:35, VI proceeding, the District may seek certiorari review. Cf. id. (petition dismissed where plaintiff filed petition for writ of certiorari when trial court refused his request for interlocutory transfer of question of law to supreme court but admitted "his right to transfer any adverse ruling on this issue to this court after trial in the Superior Court").

Having found that the issues presented either are moot or do not warrant the extraordinary remedy of a writ of certiorari, we dismiss the petition.

Dismissed.

DONOVAN and COUNTWAY, JJ., concurred; ABRAMSON, J., retired superior court justice, specially assigned under RSA 490:3, concurred; HANTZ MARCONI, J., sat for oral argument but subsequently disqualified herself and did not participate in further review of the case.

**Timothy A. Gudas,**
**Clerk**