Rockingham
No. 96-261

EUGENE A. CORMIER, TRUSTEE OF TERRA REALTY TRUST

v.

TOWN OF DANVILLE ZONING BOARD OF ADJUSTMENT

May 14, 1998

*Sheehan Phinney Bass & Green, P.A.*, of Manchester (*Peter F. Kearns* and *Thomas M. Closson* on the brief, and *Mr. Kearns* orally), for the plaintiff.

*Loughlin & Wade*, of Portsmouth (*Peter J. Loughlin* on the brief and orally), for the defendant.

JOHNSON, J. The plaintiff, Eugene A. Cormier, Trustee of Terra Realty Trust, appeals from the Superior Court's (*Coffey*, J.) denial of three consolidated petitions for appeal from decisions of the defendant, the Town of Danville Zoning Board of Adjustment (board). We reverse in part, vacate in part, and remand.

The Danville Zoning Ordinance (ordinance) prohibits excavation in Danville except by special exception obtained from the board through a procedure outlined in the ordinance. In April 1993, the plaintiff and a co-trustee filed an application for special exception with the board to obtain permission to conduct commercial sand and gravel excavation on a parcel of land in Danville owned by Terra Realty Trust (trust). The board denied the application and the plaintiff appealed to the superior court. *See* RSA 677:4 (1986) (amended 1994, 1995, 1996). The plaintiff filed a second application with respect to the same parcel in March 1994. The board denied the second application and the plaintiff filed a second appeal, which was consolidated with the prior appeal.

Following an in-chambers conference with counsel, the Superior Court (*Goode*, J.) issued a remand order that directed the plaintiff to submit to the board a revised application containing two proposals: "(a) application without any excavation below a point 3' above the seasonal high water table [part A]; (b) application with excavation creating up to 3 separate ponds below the seasonal high water table [part B]." The order also required the board to expeditiously review the application and provided that the plaintiff could challenge an adverse ruling of the board in an appeal that could be consolidated with the prior two applications.

The board denied part A of the revised application because it found that the proposed use of Tuckertown Road for access to the excavation site would be detrimental to the historic and natural character of Tuckertown Road; be detrimental to the public health, safety, and welfare; and constitute a nuisance. Based upon a 1995

amendment to the ordinance that prohibited excavation below three feet above the seasonal high water mark, the board declined to consider part B of the revised application.

The plaintiff again appealed to the trial court, which held a hearing and conducted a view of the property. Agreeing with the board's finding that the proposal is incompatible with and detrimental to the historic and natural character of Tuckertown Road, the trial court denied the plaintiff's appeal without examining the other reasons for the board's denial. The court also found that although the board's refusal to consider part B of the application was questionable in light of the date of the plaintiff's applications and the court's remand order, the error, if any, was harmless because part B also proposed to use Tuckertown Road for access. The plaintiff challenges both rulings on appeal.

■ We will uphold the trial court's rulings unless they are not supported by the evidence or are erroneous as a matter of law. *See Belluscio v. Town of Westmoreland*, 139 N.H. 55, 56, 648 A.2d 211, 212 (1994). Under the applicable provisions of the ordinance, a special exception must be granted if the board finds:

a. That the excavation and/or removal is compatible, and not detrimental or injurious to any one of the following:

1) existing residential or commercial retail and service land uses as defined in Zoning Ordinance, in the general area of the proposed excavation;

2) public health, safety and welfare;

3) natural features, i.e., including but not limited to, groundwater, surface water drainage, wetlands;

4) historic landmarks or other historic structures.

b. The excavation will not damage a known aquifer

. . . .

c. That the excavation will not constitute a nuisance due to any and all forms of hazards and/or disturbances.

DANVILLE, N.H. ZONING ORDINANCE art. V, § F(2) (1993). "Exceptions provide relief from the operation of the ordinance, and the conditions for granting them must be found in the ordinance and may not be varied." *Town of Goffstown v. Thibeault*, 129 N.H. 454, 460, 529 A.2d 930, 934 (1987) (quotation omitted). The board must grant the special exception if the conditions are met, "although the

board does have authority to place reasonable conditions on the granting of the exception." *Geiss v. Bourassa*, 140 N.H. 629, 632, 670 A.2d 1038, 1040 (1996) (quotation omitted).

The town maintains that the plaintiff failed to show compatibility with and an absence of detriment to "natural features" and "historic landmarks." In particular, the town asserts that Tuckertown Road is itself a historic landmark and a natural feature. The trial court supported this view in finding that "the proposal [would be] incompatible and detrimental to the natural features and historic structure of Tuckertown Road." We conclude that this finding is unsupported by the evidence.

While we have described a state administrative agency's determination of adverse effect on "historic sites" as a "general discretionary finding[]," we have recognized that "the law demands that findings be more specific than a mere recitation of conclusions." *Society for Protection of N.H. Forests v. Site Evaluation Comm.*, 115 N.H. 163, 173-74, 337 A.2d 778, 787 (1975). Here, the board failed to support adequately not only its finding of adverse effect, but also its implicit finding that the road constitutes a historic landmark within the meaning of the ordinance. The stipulated facts show only the following: Tuckertown Road was laid out in 1766. In the early 1800s, an epidemic devastated the area's population, and the land was allowed to grow over with trees. The road was closed in 1954 by vote of the town meeting and was designated in 1973 as a scenic road that "should remain closed in an unimproved (unpaved) condition 'to protect the scenic and historic character' of the road." *See* RSA 231:157, :158 (1993).

Other than the road's age and the town's assertion that it "provides a physical and aesthetic link to the 18th century Tuckertown settlement," there is no evidence of or finding as to the historic significance of the road. *Cf.* RSA 227-C:1, VI (1989) (defining "[h]istoric property" as "any building, structure, object, district, area or site that is significant in the history, architecture, archeology or culture of this state, its communities, or the nation"). Although the town used the word "historic" to describe the road in the 1973 vote to designate it a scenic road, we are unwilling to infer solely from the town's use of a procedure expressly addressed to preserving scenery that the town considered Tuckertown Road a historic landmark. *See* RSA 231:157, :158. There is no evidence that the town has taken any other steps to preserve the road as a historic landmark or to designate the area as a historic district. *See* RSA 674:46 (1996).

■ The trial court's finding of incompatibility with and detriment to a natural feature is similarly unsupported. In reviewing the court's finding, we must first determine what the term "natural" means for purposes of the ordinance. The interpretation of a zoning ordinance is a question of law, and we are not bound by the construction placed on the ordinance by the board, *see Brennan v. Winnipesaukee Flagship Corp.*, 122 N.H. 524, 526, 446 A.2d 1175, 1177 (1982), or the trial court, *see Healey v. Town of New Durham*, 140 N.H. 232, 236, 665 A.2d 360, 365 (1995).

> In general, the traditional rules of statutory construction will govern here. Thus, the words and phrases of an ordinance should always be construed according to the common and approved usage of the language, but where the ordinance defines the term in issue, that definition will govern. Further, when the language of the ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent.

*Id.* (quotation and brackets omitted).

■ The common meaning of the word "natural," in the context of the ordinance, is "existing in or produced by nature: consisting of objects so existing or produced: not artificial." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1506 (unabridged ed. 1961). We are unable to conclude that Tuckertown Road itself, a man-made structure, is a natural feature as contemplated by the ordinance. *Cf. Department of Public Works & Bldgs. v. Keller*, 316 N.E.2d 794, 797 (Ill. App. Ct. 1974) ("[T]he word 'natural' means untouched by man or by the influences of civilization; wild; untutored. Natural condition of the land is used to indicate that the condition of the land has not been changed by any act of a human being."), *aff'd*, 335 N.E.2d 443 (Ill. 1975). Neither the court nor the board specifically found incompatibility with or detriment to any natural feature distinct from the road itself.

In the absence of supportable findings that the project would be incompatible with or have a detrimental impact on natural features or historic landmarks, we must reverse the trial court's decision. Because we have reversed the trial court's basis for finding that the board's refusal to consider part B of the revised proposal was, if

anything, harmless error, we vacate that ruling and remand for further consideration.

*Reversed in part; vacated in part; remanded.*

THAYER and BRODERICK, JJ., did not sit; the others concurred.