**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2019-0739, <u>Appeal of H.G. Wood Industries, LLC</u>, the court on December 22, 2020, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioners, Lumber Industries Self-Insured Group and its third-party administrator, The Lawson Group, workers' compensation carrier for the employer, H.G. Wood Industries, LLC, appeal an order of the Compensation Appeals Board (CAB) denying reimbursement from the State Special Fund for Second Injuries. <u>See</u> RSA 281-A:54, :55 (2010 & Supp. 2019). We affirm.

The following facts were found by the CAB or are supported by the record. The employee worked for the employer as a laborer in September 2014. On March 2, 2015, the employee injured his right wrist while moving lumber. Later that day, a doctor diagnosed the employee with tendonitis in the right wrist, and the employee returned to work with some restrictions on the use of his wrist. On March 10, the employee was seen by a doctor, who diagnosed a tendon sprain and recommended that the employee continue working while using a splint on his wrist.

One year later, on March 4, 2016, a nurse practitioner treated the employee and cleared him to work full-duty with no restrictions on the use of his wrist. On April 4, the nurse practitioner treated the employee again, providing him with an injection to treat pain in his wrist, and noted that he could continue to work full-duty with no restrictions, although she noted that the employee should use a brace "as needed." She also discussed with the employee the option of surgery. On May 16, Dr. Mullins treated the employee and diagnosed him with scapholunate advanced collapse (SLAC) and arthritis in his right wrist.

On April 3, 2017, Dr. Mullins again treated the employee and confirmed his initial diagnosis of SLAC and arthritis. Dr. Mullins discussed with the employee his treatment options, which included watchful waiting, injections, bracing, or surgical intervention. The employee eventually elected to undergo surgery, which was performed in August 2017. During the course of his treatment, various medical providers noted on workers' compensation forms that it was undetermined whether his injury caused a permanent impairment.[1]

---

[1] We observe that one medical provider noted that the employee's injury caused a permanent

Thereafter, Dr. Forrest, who reviewed the employee's medical records on behalf of the petitioners' attorney, concluded in August 2018 that the employee's SLAC constituted a permanent impairment. Dr. Forrest opined that the SLAC resulted in limitations caused by pain and a decreased range of motion in the employee's right hand and wrist.

The petitioners requested reimbursement from the State Special Fund for Second Injuries. The Fund denied the petitioners' claim by letter, and the petitioners subsequently appealed to the CAB. The CAB held a hearing, accepted evidence, and conducted a de novo review. See Appeal of Levesque, 136 N.H. 211, 214 (1992). As relevant here, the CAB found that the petitioners had presented "no evidence that [the employee]'s permanent condition is an objective hindrance" to obtaining employment and denied the petitioners' claim. This appeal followed.

We will not set aside or vacate an administrative decision except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that the decision is unjust or unreasonable. Appeal of CNA Ins. Cos., 143 N.H. 270, 272 (1998); see RSA 541:13 (2007). Our review of the CAB's factual findings is deferential. Appeal of Hartford Ins. Co., 162 N.H. 91, 93 (2011); see RSA 541:13 ("[A]ll findings of the [CAB] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable.").

On appeal, the petitioners argue that the CAB erred by: (1) considering the Fund's unpreserved arguments challenging Dr. Forrest's opinion; (2) rejecting certain medical providers' opinions; (3) applying the incorrect statutory standard in determining whether the employee had a permanent impairment; (4) concluding that the employee had not suffered a permanent impairment; (5) requiring that the employee experience an "original period" of disability; (6) concluding that the employee's injury was not a hindrance to obtaining employment; and (7) ruling that surgery could not constitute a subsequent disability. To resolve this case, we find it necessary to address only the first, third, and sixth arguments.

The petitioners first argue that the CAB erred in considering arguments opposing Dr. Forrest's opinion — an opinion which the CAB ultimately rejected — that the employee had a permanent impairment because the Fund "failed to preserve the issue by raising the arguments in its denial letter" and thus the petitioners had "no notice of any argument on the issue." This argument is unavailing.

We have explained that a party need only receive notice reasonably calculated to give it actual notice of the issues to be decided at the hearing and afford it the opportunity to present its objections. Appeal of Hiscoe, 147 N.H.

---

impairment, although she had previously noted that it was undetermined whether it did.

223, 227 (2001). The Fund's denial letter articulates three reasons for denying the petitioners' claim, including that "a permanent impairment could [not] be determined." The letter thus provided the petitioners with notice that allowed them to contest the question of whether the employee suffered a permanent impairment, which the petitioners could have done by arguing that Dr. Forrest's opinion on that issue was correct and improperly rejected by the Fund.

The petitioners' reliance on our opinion in Appeal of Wingate, 149 N.H. 12 (2002), is misplaced. There, the CAB denied coverage for a medical bill because it concluded that: (1) the claimant's back condition was not causally related to his work injury; and (2) the bill was neither reasonable nor necessary. Id. at 15. We vacated the CAB's ruling with respect to the reasonableness and necessity of the bill because that issue was not properly before it; the letter denying the claimant coverage contested only the causal relationship between the treatment underlying the medical bill and the work injury. Id. Here, on the other hand, the issue of whether the employee suffered a permanent impairment was raised in the Fund's denial letter. We do not read Wingate as requiring the Fund's denial letter to cite each specific piece of evidence considered and rejected in reaching its conclusion on the ultimate question of whether an employee's condition constitutes a permanent impairment in order to preserve arguments regarding that evidence. Accordingly, we conclude that the Fund's letter gave the petitioners sufficient notice, providing them with the opportunity to object to the Fund's reasons for denying their claim. See Appeal of Hiscoe, 147 N.H. at 227.

We briefly address the petitioners' argument that the CAB applied the incorrect legal standard in concluding that the employee did not have a permanent impairment. The petitioners' argument focuses on the Fund's denial letter, which twice reasoned that the employee failed to reach "MMI," or maximum medical improvement, in support of the Fund's conclusion that "a permanent impairment could [not] be determined." The State Special Fund for Second Injuries statute's definition of "permanent physical . . . impairment," however, does not include the phrase maximum medical improvement. See RSA 281-A:2, XIV (2010).[2] That the Fund cited an inapplicable statutory standard in its denial letter does not affect the CAB's decision because the CAB conducted a de novo review of the Fund's denial, see Levesque, 136 N.H. at 214, and applied the correct statutory definition of permanent physical impairment, without considering whether the employee had reached maximum medical improvement.

---

[2] RSA 281-A:32, XI, which is not at issue in this appeal, states that payment of an award for certain permanent bodily loss or losses sustained by an employee "becomes due upon prompt medical disclosure, after maximum medical improvement has been achieved."

The petitioners also argue that the CAB erred in concluding that the employee's condition did not constitute a hindrance or obstacle to obtaining employment.  See RSA 281-A:2, XIV.  To qualify for reimbursement from the Fund, the petitioners must, as relevant here, pay workers' compensation benefits to an employee with a permanent physical impairment.  Appeal of CNA, 143 N.H. at 273; see RSA 281-A:54, I.  The State Special Fund for Second Injuries statute defines "permanent physical . . . impairment" as "any permanent condition that is congenital or due to injury or disease and that is of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining employment if the employee should become unemployed."  RSA 281-A:2, XIV.  After reviewing the record, we conclude that the petitioners have failed to demonstrate that the CAB's conclusion that the employee's injury was not so serious as to constitute a hindrance or obstacle to obtaining employment was "unjust or unreasonable."  Appeal of CNA, 143 N.H. at 272 (quotation omitted).

When determining whether an employee's condition is serious enough to constitute a hindrance or obstacle to obtaining employment, we ask "whether the impairment is such that an employer who knew of it and its extent would more likely than not significantly consider it when making a decision to hire or retain the employee."  Appeal of Hartford, 162 N.H. at 97 (quotation omitted).  The record indicates that on the date of the injury, a doctor placed restrictions only on the employee's ability to climb, and stated that he should not use his right wrist in a repetitive motion.  One week after the injury, the employee was experiencing some pain but was cleared to return to work full duty, with the restriction of not engaging in repetitive motions with his right wrist.  Within a month of the employee's injury, he was still experiencing some pain, but had a "full range of motion" in his wrist.  The record further shows that, although the employee experienced persistent pain and discomfort with activities like "push[ing] himself up with his right hand," he was able to manage this pain by various means, including injections, which he stated "'worked quite well.'"  Having reviewed the record, we conclude that the petitioners have failed to show that an employer would significantly consider the employee's condition when making a decision to hire or retain him.  See id.

In support of their argument that the employee's injury would present a hindrance or obstacle to his obtaining employment, the petitioners point to the fact that, after the injury, the employee's position changed from laborer to forklift operator.  However, as we explained in Appeal of Hartford, "the employee's ability to perform his or her existing job, or one like it, is not determinative of whether the preexisting impairment is 'a hindrance or obstacle to obtaining employment.'"  Id. at 96 (quoting RSA 281-A:2, XIV).  Accordingly, we conclude that the petitioners have failed to demonstrate that the CAB's finding that the employee's condition did not constitute a hindrance or obstacle to obtaining employment is unjust or unreasonable.  See Appeal of CNA, 143 N.H. at 272; see also Torelli v. Robert Hall Clothes, 9 A.D.2d 147, 149 (N.Y.

App. Div. 1959) (noting that whether a condition constitutes a hindrance to obtaining employment "lies in the area of fact-finding" when its "effect would be fairly debatable").  Because we conclude that the petitioners have failed to satisfy one element of the definition of permanent physical impairment, <u>see</u> RSA 281-A:2, XIV, they were precluded from obtaining reimbursement from the Fund, and we need not address their other arguments.

<u>Affirmed</u>.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**